# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:20-cv-00206-RJC-DSC

| | |
|---|---|
| SHANETTE ROGERS, ) | |
| Plaintiff, ) | |
| v. ) | **Order** |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Plaintiff's "Motion for Summary Judgment," (DE 10); Defendant's "Motion for Summary Judgment," (DE 14); and the Magistrate Judge's Memorandum and Recommendation ("M&R") recommending that this Court grant Plaintiff's Motion for Summary Judgment and reverse the Commissioner's decision, (DE 18).

Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and will **AFFIRM** the decision. Accordingly, the Court **DECLINES TO ADOPT** the M&R and will **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff Shanette Rogers ("Rogers") applied for disability benefits on October 4, 2018, alleging a disability that began on May 30, 2018. After an initial denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was held on October 25, 2019 before an ALJ at which Rogers, her then-attorney, and an impartial vocational expert ("VE") appeared. Rogers testified that she was 50 years old and had a Master's degree in Social

Work, a field where she had worked from 1999 to May 2018. Prior to this, she served in the U.S. Army for four years and was honorably discharged. Rogers suffers from Posttraumatic Stress Disorder ("PTSD") as a result, at least partially, from a sexual assault that occurred while she was in the Army. The Veterans Administration ("VA") has given Rogers a 100-percent disability rating based on her PTSD. Rogers also testified that she could care for her personal hygiene, prepare meals, do household chores, shop, work in the yard, drive, enjoy crafts like needlepoint, manage her own finances, and play games online. After the hearing, the ALJ denied Rogers' applications on December 2, 2019, finding that Rogers was not disabled under the Act. (DE 9-1 at 17–25).

The ALJ's decision listed PTSD as a severe impairment; found that Rogers' PTSD did not rise to a level sufficient to satisfy any "paragraph B" criteria; and determined that Rogers' had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to unskilled work of a routine and repetitive nature in 2-hour segments in a stable work environment at a pace controlled by the worker. Pace is non-automated, non-conveyor belt, non-assembly line, and non-piece rate. She is limited to occasional interpersonal interaction with co-workers and supervisors as well as occasional public contact. She will be off task less than 10% of an eight-hour workday. Her ability to concentrate is greater than 2-hour segments of an eight-hour workday.

The ALJ determined that Rogers was unable to perform any past relevant work as a Case Worker or Wooden Ware Assembler, but could perform the requirements of a Laundry Worker, Landscape Specialist, or Industrial Cleaner. (DE 9-1 at 17–25).

After exhausting her administrative remedies, Rogers filed the instant action appealing the ALJ's decision on April 3, 2020. (DE 1). In her summary judgment motion, Rogers argues for reversal on three grounds: (1) the weight the ALJ gave to psychiatric medical opinion evidence on PTSD is not supported by substantial evidence, (2) the ALJ failed to properly

2

Case 3:20-cv-00206-RJC-DSC   Document 23   Filed 01/13/22   Page 2 of 13

address a VA disability rating, and (3) the ALJ reduced the social functioning limitation found by Rogers' doctor when determining her RFC without substantial evidence. (DE 11). In response, Defendant argues on summary judgment that substantial evidence supports the ALJ's decision and the ALJ applied the correct legal standards. (DE 15).

The M&R found for Rogers on the second ground—that the ALJ did not make case specific findings explaining its failure to follow a VA disability decision as required by common law—and recommended reversal and remand. (DE 18 at 5). The M&R did not address the other two issues raised by Rogers.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.*

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453,

3

1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

#### A. Evaluation of VA Disability Rating

The M&R sought to determine whether judicial precedent in the Fourth Circuit remained

4

controlling law after the Social Security Administration ("SSA") rescinded Ruling 06-03 and revised pertinent regulations. *See, e.g*., 20 C.F.R. § 404.1504. Case law preceding the revisions held that disability determinations of other government agencies are highly relevant and that for ALJs to give such determinations less than substantial weight, the ALJs must give "persuasive, specific, and valid reasons." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (ALJ must consider as evidence the disability determination of a state agency); *Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012) (ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating); *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018) (To afford less than substantial weight to another governmental agency's disability determination, the ALJ must give "persuasive, specific, valid reasons."). In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. . . . Thus . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. 699 F.3d 337, 343 (4th Cir. 2012) (citation omitted).

Subsequent to *Bird*, the regulations were amended to provide that for claims filed after March 27, 2017, "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). The revised regulations further provide:

> Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the

5

supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. Thus, there is an incongruity between *Bird* and the regulations, and "there is no Fourth Circuit precedent discussing the interplay between 20 C.F.R. § 404.1504 and *Bird v. Commissioner*, 699 F.3d 337 (4th Cir. 2012)." *See Wright v. Kijakazi*, No. 3:20-CV-201-DSC, 2021 WL 3432909, at *2 (W.D.N.C. Aug. 5, 2021).

This incongruity was addressed in *Rose v. Saul*, No. 7:19-cv-91, 2020 WL 4740479 (E.D.N.C. Aug. 14, 2020) (J., Boyle), which the M&R found persuasive. In *Rose*, the court held that the new regulations did not supersede the Fourth Circuit's decision in *Bird*.

> The new rules did not supersede the Fourth Circuit's decision in Bird, and the ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating. The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of Bird and the cases that preceded it. Bird did not interpret a prior regulation, alterable by SSA. Rather, Bird followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Id.* at *3–4. This determination, that the new regulation does not displace prior common law, is mirrored in other North Carolina District Court cases. *Van Cleave v. Saul*, No. 1:20-cv-144-DSC, 2021 WL 2078004 (W.D.N.C. May 24, 2021) (J., Cayer); *Wright v. Saul*, No. 3:20-cv-201-DSC, 2021 WL 1124784 (W.D.N.C. Mar. 24, 2021) (J., Cayer). However, there is a split within the Fourth Circuit as other courts have found that the regulations trump prior case law. *Johnson v. Saul*, No. 6:19-1155-MGL-KFM, 2020 WL 6265092 (D.S.C. Sept. 30, 2020), *adopted by* 2020 WL 5810523 (D.S.C. Sept. 30, 2020) (J., Lewis) ("although *Bird* is still good law in this circuit, the portion discussing the treatment of VA disability ratings is not applicable to the plaintiff's application" because it was filed after the regulations were amended); *Pirolo v. Saul*, No. 5:19-CV-2881-KDW, 2021 WL 389250 (D.S.C. Feb. 4, 2021) (J., West) ("[T]he holding regarding

6

VA disability ratings in *Bird* is inapplicable in this matter and . . . the ALJ's decision appropriately discusses the evidence underlying the VA disability rating, as required by the regulations amended as of March 27, 2017."); *Hagan v. Saul*, No. 9:19-2591-BHH, 2021 WL 870383 (D.S.C. Mar. 9, 2021) (J., Hendricks) ("the [new] regulations specifically provide that an ALJ will not provide any analysis of a VA disability determination"); *Wade v. Kilolo Kij*, No. 5:20-CV-104-M, 2021 U.S. Dist. LEXIS 187360, at n.3 (E.D.N.C. Sept. 14, 2021) (J., Meyers) (noting that Bird was superseded in part by 20 C.F.R. § 404.1504 for claims filed on or after March 27, 2017). There is also a trend in district courts across the country—including those in the Second, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits—that the revised regulations trump prior case law.[1]

In its objection to the M&R, Defendant argues that under *Chevron* and its progeny, the

---

[1] *Homer D. v. Saul*, No. 2:19-cv-00424-JTR, 2021 WL 309134, at *6 (E.D. Wash. Jan. 29, 2021) (J., Rogers) ("This new regulation removes any requirement for an ALJ to discuss a VA rating. To the extent that prior case law conflicts with the new regulations, the new regulations are controlling.") (citing *Brand X*, 545 U.S. at 982); *Charles F. v. Comm'r Soc. Sec.*, No. 19-cv-1664-LJV, 2021 WL 963585, at *2 (W.D.N.Y. Mar. 15, 2021) (J., Vilardo) ("The ALJ was correct that he did not have to weigh or discuss the VA's ultimate decision that Charles was 100% disabled or unable to work."); *Jackson v. Saul*, No. 1:19-cv-274-HSO-LRA, 2020 WL 5106600, at *3 (S.D. Miss. Aug. 31, 2020) (J., Ozerden) ("[T]he VA's determination of disability due to Jackson's mood disorder (even where the ALJ acknowledged the existence of such a determination during the hearing) does not make her claim of severe impairment 'colorable.'"); *Daniels v. Saul*, No. 7:19-cv-01003-RDP, 2020 WL 4922151, at *7 (N.D. Ala. Aug. 21, 2020) (J., Proctor) ("Under the new regulations, an ALJ is not required to assign any weight or analysis to the VA Disability Rating, but must consider all of the evidence that supports the VA's decision."); *Jester v. Saul*, No. 19-cv-793, 2020 WL 4040586, at *3 (E.D. Wis. July 17, 2020) (J., Joseph) ("The ALJ's failure to reference the April 6, 2018 VA decision, in and of itself, is not error" in light of the revised regulations.); *Stoup v. Saul*, No. CV-19-110, 2020 WL 3034836, at *4 (W.D. Pa. June 5, 2020) (J., Ambrose) ("Under the new standard, I find no error in this regard. I find this reference was adequate and that the ALJ was not required to provide any further analysis of the VA rating."); *Jones v. Berryhill*, 392 F. Supp. 3d 831, 846 (M.D. Tenn. 2019) (J., Crenshaw, Jr.) ("[W]hile the ALJ need not analyze the decision of another government agency, the ALJ will, however, consider all supporting evidence underlying the decision made by the governmental agency."); *Kathleen H. v. Saul*, No. 3:19-cv-00189-AA, 2020 WL 5017760, at *5 (D. Or. Aug. 25, 2020) (J., Aiken) ("*McCartey* was decided before the new regulations took effect . . . ."; "[i]nsofar as plaintiff relies on *McCartey* for the proposition that an ALJ 'must ordinarily give great weight to a VA determination of disability,' *McCartey* is not established law in the Ninth Circuit."); *Edward L.C. v. Comm'r Soc. Sec.*, No. C19-5208-MLP, 2019 WL 6789813, at *2 n.3 (W.D. Wash. Dec 12, 2019) (J., Peterson) (rejecting the argument that the new regulations "fail to account for the Ninth Circuit's holding in McCartey" and holding instead that "the ALJ is no longer required to assign weight to VA disability determinations"); *Allen v. Saul*, No. EP-20-cv-00045-ATB, 2020 WL 4755362, at *4 (W.D. Tex. Aug. 14, 2020) (J., Berton) ("Allen's reliance upon Fifth Circuit precedents involves social security claims filed before March 2017, that are not applicable to this case."); *Walker v. Saul*, No. 4:19-cv-00338, 2020 WL 3491839, at *5 (S.D. Tex. June 26, 2020) (J., Eskridge) (explaining that prior precedents, including from the Fifth Circuit, "interpret the previous regulatory scheme. They don't address or resolve the standard under the current regulations.").

7

Commission acted within its broad rulemaking authority in revising the regulations after proper notice and comment procedures. (DE 19). Under *Chevron*, agencies are allowed to construe their governing statutes and promulgate regulations to carry out their congressional mandate if the statute does not unambiguously express Congress' specific intent on that particular issue. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). As is often the case, when there are gaps in the statute, agencies are allowed to promulgate rules to fill in such gaps so that they can administer a congressionally created program, so long as the rules are not arbitrary and capricious. *Id.* Importantly, "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). Moreover, revisions to agency policy that are inconsistent with judicial precedent do not make an agency's revisions arbitrary or capricious. *Chevron*, 467 U.S. at 863 ("An initial agency interpretation is not instantly carved in stone."); *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996) ("[T]he mere fact that an agency interpretation contradicts a prior agency position is not fatal. . . . change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency.").

The Court finds Defendant's argument persuasive. Defendant promulgated the 2017 revisions to change the agency's rules, including those governing consideration of disability decisions by other entities. As part of its rationale for the change, Defendant noted:

> (1) the Act's purpose and specific eligibility requirements for disability and blindness differ significantly from the purpose and eligibility requirements of other
> programs; (2) the other agency or entity's decision may not be in the record or

8

Case 3:20-cv-00206-RJC-DSC   Document 23   Filed 01/13/22   Page 8 of 13

> may
> not include any explanation of how the decision was made, or what standards applied in making the decision; (3) our adjudicators generally do not have a detailed
> understanding of the rules other agencies or entities apply to make their decisions; and (4) over time Federal courts have interpreted and applied our rules and Social Security Ruling (SSR) 06-03p differently in different jurisdictions.

82 Fed. Reg. at 5,848. Defendant also explained that "the VA and SSA disability programs serve different purposes for populations that overlap," noting that one third of individuals with a 100-percent VA disability rating are denied SSA benefits. *Id.*

The revision is not arbitrary and capricious, nor was such an argument raised, as Defendant provided cogent reasons for its actions, and the Court is unaware of any facts showing that Defendant failed to follow proper notice and comment rulemaking. Thus, as Defendant was given the authority to make rules and regulations and establish procedures to evaluate disability claims and disburse funds, 42 U.S.C. § 405(a), and Congress failed to specifically address how ALJs should consider disability determinations from other agencies, Defendant was within its right to revise its regulations on this matter. Accordingly, for claims filed on or after March 27, 2017, the revised regulations supersede judicial precedent and ALJs are not required to provide persuasive, specific, and valid reasons for discounting VA disability ratings. *See Brand X*, 545 U.S. at 982–83 ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.").

Here, the ALJ discussed the medical evidence underlying the VA disability determination and noted that he found the underlying medical evidence and VA decision "only partly persuasive." (DE 9-1 at 22). All that is required under the revised rules is that the ALJ considers all supporting evidence underlying another agency's disability decision. 20 C.F.R. § 404.1504.

9

The ALJ did that here, and there is no error.

B. Evaluation of Dr. Wheeler's Reports

As part of Rogers' VA disability claim, John Wheeler, Ph. D., a licensed psychologist, reviewed Rogers' records and conducted two clinical interviews of Rogers in November 2017 and August 2018. (DE 15 at 4). Dr. Wheeler diagnosed Rogers with PTSD, chronic, moderate to severe, which he concluded was more likely than not caused by a sexual assault while Rogers was in the Army. (DE 11 at 13). In her summary judgment motion, Rogers argues that the ALJ erred in his analysis by (1) listing Rogers' behaviors (that she was suspicious and guarded and had disorganized thought processes) as reported symptoms rather than as Dr. Wheeler's medical findings, (2) noting that Dr. Wheeler "suggested" that the PTSD was service connected when the VA ruled that the PTSD was service connected in processing the claim, and (3) finding PTSD as a severe impairment while also finding that Dr. Wheeler's opinion, which also found PTSD to be a severe impairment, was only partly persuasive.

Rogers' arguments lack merit. Rogers fails to show how a remand on any of the three grounds may lead to a different result. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) (stating that the party attacking the agency determination normally bears the burden of showing that an error was harmful); *Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.\* (4th Cir. 2011) (applying the *Sanders* harmless-error standard in a Social Security-disability case); *Smith v. Colvin*, No. 1:12-cv-00285-MOC, 2014 WL 1203282, at \*7 (W.D.N.C. Mar. 24, 2014) (stating that error is harmless where remand would not lead to a different result) (citing, inter alia, *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")). Moreover, Rogers' primary argument—that

10

the ALJ's decision was illogical because it agreed with Dr. Wheeler's diagnosis while also finding Dr. Wheeler's opinion only partly persuasive—is unconvincing. First, one can agree with portions of an opinion while also not agreeing with the entire opinion. Second, one could find Dr. Wheeler's opinion, which is largely based on subjective reports and which includes no specific evidentiary support, only partly persuasive for those reasons alone. Regardless, even assuming there was an error, Rogers fails to show how any of the three grounds were anything more than harmless errors as the ALJ found Rogers' PTSD to be a severe impairment, just like Dr. Wheeler.

      **C.     Evaluation of Rogers' Social Functioning and Dr. Ritterspach's Opinion**

Rogers argues that the ALJ failed to provide sufficient reasons for rejecting social functioning limitations found by Dr. Ritterspach, and thus the ALJ's decision was not supported by substantial evidence. In particular, Rogers argues that the ALJ reduced the social functioning limitation from "severe to moderate," in contravention of Dr. Ritterspach's opinion, for "specious reasons." (DE 11 at 24).

In November 2018, as part of the VA disability process, Chad Ritterspach, Psy. D., performed a psychological evaluation on Rogers. Dr. Ritterspach diagnosed Rogers with PTSD and found that Rogers "ability to relate to others, including coworkers and supervisors appears moderately/significantly impaired." (DE 9-1 at 272). The ALJ found Dr. Ritterspach's opinion persuasive as of the time of the evaluation, but only partly persuasive thereafter. (DE 9-1 at 21–23). The ALJ found Rogers' social functioning closer to moderately impaired than significantly impaired because, unlike at the time Dr. Ritterspach evaluated Rogers, Rogers was on medication that helped her symptoms of depression, insomnia, and toned down her thoughts that

11

others wanted to harm her.[2] The ALJ also found that Rogers' mental health condition had "dramatically improved" after Dr. Ritterspach's evaluation as Rogers had an emotional support animal that she admits provided great comfort and mood stability, her mental status exam was within normal limits, and Rogers admitted to greater control in toning down her irritability and aggressive nature in social situations. (*Id.*).

Rogers argues the record evidence only shows the medications were helping Rogers' paranoia, not her irritability and aggressive nature in social situations and that the ALJ's decision to reject Dr. Ritterspach's social functioning opinion based on Rogers' positive reaction to medication was without substantial evidence. (DE 11 at 27). The Court disagrees.

It is unclear how the ALJ "rejected" Dr. Ritterspach's opinion. Dr. Ritterspach did not opine that Rogers' social functioning was "severe." Instead, he opined that Rogers' social functioning was "moderately/significantly impaired." After reviewing all the evidence, including Rogers' increasing mental health, the ALJ found Rogers' social functioning was "only mildly to moderately limited." (DE 9-1 at 22). This overlaps with Dr. Ritterspach's opinion of moderately impaired. Moreover, to the extent the ALJ's decision conflicts with Dr. Ritterspach's opinion, it is within the ALJ's purview—and not this Court's purview—to weigh the evidence and make creditability determinations. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (stating that, in conducting substantial-evidence review, a court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ and that, where conflicting evidence allows reasonable minds to differ, the responsibility for making the decision falls on the ALJ). The ALJ considered Rogers' testimony, her medical history, and previous medical opinions to make a decision regarding Rogers' social

---

[2] "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

functioning. As the ALJ cleared the "not high" threshold for substantial evidence by providing valid reasons for his social functioning decision, there was no error. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Nor did the ALJ fail to "build an accurate and logical bridge from [the] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (DE 18), is **NOT ADOPTED**;

2. Plaintiff's Motion for Summary Judgment, (DE 10), is **DENIED**;

3. Defendant's Motion for Summary Judgment, (DE 14), is **GRANTED**; and

4. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED**.

Robert J. Conrad, Jr.
United States District Judge